No. 81-77

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

N. J. HASTETTER, M.D.,

      Plaintiff and Appellant,

  -vs-

J. J. BEHAN AND MID-RIVERS TELEPHONE
COOPERATIVE, INC.,

      Defendant and Respondent.

---

Appeal from:  District Court of the Seventh Judicial District,
In and for the County of McCone, The Honorable
M. James Sorte, Judge presiding.

Counsel of Record:

    For Appellant:

        Moses Law Firm, Billings, Montana

    For Respondent:

        Keefer, Roybal & Hanson, Billings, Montana
        Moulton, Bellingham, Longo & Mather, Billings,
        Montana
        Jardine, Stephenson, Blewett & Weaver, Great
        Falls, Montana
        Crowley, Haughey, Hanson, Toole & Dietrich,
        Billings, Montana

---

Submitted on Briefs:  July 16, 1981

Decided:  January 20, 1982

Filed: **JAN 2 0 1982**

Thomas J. Kearney
_____
                      Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This action is based on the defendants' alleged violation of the plaintiff's right to privacy as provided in Art. II, Sec. 10, 1972 Mont. Const., and the defendants' alleged violation of 47 U.S.C. §605. Defendants' motion for summary judgment was granted by the District Court of the Seventh Judicial District, in and for the County of McCone. Plaintiff appeals the summary judgment.

Respondent Mid-Rivers Cooperative (Mid-Rivers) is a corporation organized under the Rural Electric and Telephone Cooperative Act, Title 35, Chapter 18, Montana Code Annotated. Respondent Behan was hired as the general manager of Mid-Rivers in November 1977 and continues to hold that position. Appellant Hastetter is a physician residing in Circle, Montana, and is a Mid-Rivers subscriber.

Appellant was concerned about what he believed were extravagant expenditures on the part of Mid-Rivers and its employees and took it upon himself to investigate the finances of Mid-Rivers. In his investigations appellant made a number of phone calls to the Rural Electrician Administration (REA) in Washington, D.C.

Appellant's cause of action arises out of respondent Behan's examination of his telephone records. Behan admits that while he was conducting a survey of heavy toll users, he examined the appellant's toll records to verify that appellant was calling the REA. Behan further admits that he examined the appellant's toll records and that his purpose in doing so was to determine where and to whom the appellant had made his long distance calls.

The District Court granted the respondents' motion

for summary judgment on the grounds that appellant has no claim of relief under either the Montana Constitution or 47 U.S.C. §605.

The issue on appeal, then, is whether the District Court erred by finding that neither the Montana Constitution nor 47 U.S.C. §605 provides the appellant with a claim of relief on the facts alleged.

We must agree with the District Court since telephone records cannot be considered constitutionally-protected private matters and 47 U.S.C. §605 protects only communications by radio.

Art. II, Sec. 10, 1972 Mont. Const., provides:

"The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest."

The District Court held that the appellant had no claim of relief under the above provision because no state action was involved in any way. While we agree that the appellant has no claim of relief under this provision, we do not agree with the District Court's reason. The key question here is whether the appellant had a reasonable expectation of privacy in his telephone records.

Our constitutional right of privacy cannot protect something that is not a private matter. Persuasive federal authority holds that there is not a legitimate expectation of privacy in the mere fact that a telephone call was made to a particular number. See Smith v. Maryland (1979), 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220; United States v. New York Telephone Co. (1977), 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376; and especially, Hodge v. Mountain States Telephone & Telegraph Co. (9th Cir. 1977), 555 F.2d 254.

-3-

Federal cases have clearly distinguished the difference between the recording of a conversation and merely discerning that a call was made to a particular number.

In Hodge, the court stated ". . . 'the expectation of privacy protected by the Fourth Amendment attaches to the content of the telephone conversation and not to the fact that a conversation took place.' [Citations omitted.]" 555 F.2d at 256.

The leading case of Smith v. Maryland, supra, seems to handle this matter conclusively. The issue before the Court in Smith was whether the use of a pen register constituted a "search" within the meaning of the Fourth Amendment. A pen register is a device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications and does not indicate whether calls are actually completed.

The Court in Smith looked first to the test set down in Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, in which the application of the Fourth Amendment depended upon whether the person invoking its protection has a "legitimate expectation of privacy" that has been invaded by the government. Katz, 389 U.S. at 353. The Court noted that the listening device employed in Katz differed significantly from the use of a pen register, "for pen registers do not acquire the contents of communications." Smith, 442 U.S. at 741.

In Smith, the petitioner's argument that the installation and use of the pen register constituted a

"search" rested necessarily upon a claim that he had a "legitimate expectation of privacy" in the numbers he dialed on his phone. The Court rejected this claim, stating:

> ". . . First, we doubt that people in general entertain any actual expectation of privacy in the numbers they dial. All telephone users realize they must 'convey' phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed. All subscribers realize, moreover, that the phone company has facilities for making permanent records of the numbers they dial, for they see a list of their long-distance (toll) calls on their monthly bills. . . Telephone users, in sum, typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes. Although subjective expectations cannot be scientifically gauged, it is too much to believe that telephone subscribers, under these circumstances, harbor any general expectation that the numbers they dial will remain secret.

> ". . .

> "Second, even if petitioner did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not 'one that society is prepared to recognize as "reasonable."' This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties. E.g., United States v. Miller, 425 U.S. at 442-444, 96 S.Ct. at 1623-1624. . ." (Further citations omitted.) 442 U.S. at 742-744.

Likewise, the Montana constitutional provision protecting an individual's right of privacy protects only matters which can reasonably be considered private. Telephone company billing records are not private matters. The public awareness that such records are routinely maintained negates any constitutional expectation of privacy regarding the records. See, Hodge, supra, 555 F.2d at 256, referring

to United States v. Baxter (9th Cir. 1973), 492 F.2d 150, 167, cert. denied, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292; and United States v. Fithian (9th Cir. 1971), 452 F.2d 505, 506.

Appellant therefore has no claim of relief under Art. II, Sec. 10, 1972 Mont. Const. There is no reasonable expectation of privacy in telephone records to justify bringing them under constitutional protection.

The next issue is whether appellant has a claim for relief under 47 U.S.C. §605. We agree with the District Court that appellant has no claim of relief here. The 1968 amendments to section 605 and federal case law indicate that the section is restricted to prohibiting unauthorized use of radio communications only.

The appellant claims that Behan and Mid-Rivers violated the first sentence of section 605 when Behan used appellant's telephone records to find out who appellant had been calling. The first sentence of section 605 provides:

> "Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority."

The second sentence provides that no person shall divulge or publish any radio communication.

This section cannot be interpreted without looking at its legislative history. In Hodge, 555 F.2d at 262-265, Judge Hufstedler in a concurring opinion discusses at length the history of section 605.

In 1968, when Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act, clause 2 of section 605 was amended to prohibit only the interception of radio communications. Clause 1 of section 605 was changed only cosmetically; there was no explicit limitation to only radio communications. Nevertheless, federal cases and the legislative history of the Crime Control Act indicate that Congress intended Title III of the Act to provide a whole new statutory scheme for regulation of the unauthorized use of communications by wire, and that section 605 after 1968 no longer controlled telephonic communications. See Hodge, 555 F.2d at 260; United States v. Falcone (3rd Cir. 1974), 505 F.2d 478; Korman v. United States (7th Cir. 1973), 486 F.2d 926; and especially, United States v. New York Telephone Co., supra.

The United States Supreme Court in footnote 13 of the New York Telephone Co. case stated:

> "United States v. Dote, 371 F.2d 176 (CA7 1966), held that § 605 of the Communications Act of 1934, 47 USC § 605, which prohibited the interception and divulgence of 'any communication' by wire or radio, included pen registers within the scope of its ban. In § 803 of Title III, 82 Stat.223, Congress amended § 605 by restricting it to the interception of 'any radio communication.' Thus it is clear that pen registers are no longer within the scope of § 605. See Korman v. United States, 486 F.2d 926, 931-932 (CA7 1973)." 434 U.S. at 168. (Emphasis added.)

The suggestion in this footnote that section 605 after 1968 applies only to radio communication is supported

by the legislative history of the 1968 amendment. In the
Senate Report (1968), U.S. Code Cong. of Admin. News, at
2196, the intent of Congress was made clear:

> "Section 803.--This section amends section
> 605 of the communications Act of 1934 (48
> Stat. 1103, 47 U.S.C. sec. 605 (1958)). This
> section is not intended merely to be a re-
> enactment of section 605. The new provision
> is intended as a substitute. The regulation
> of the interception of wire or oral communi-
> cations in the future is to be governed by
> proposed new chapter 119 of title 18, United
> States Code." (Emphasis added.)

As the courts noted in Hodge, Falcone and Korman, the
intent of Congress would be thwarted if pen registers were
still regulated by section 605. Telephone billing records,
like pen registers, are nothing more than the record that a
particular call was made. Since these telephonic communica-
tions are no longer covered by section 605, appellant's
claim for relief under section 605 is denied.

The appellant raised a peripheral issue concerning
the use of unsigned depositions filed long after the summary
judgment was entered. This issue need not be discussed
since this case has been resolved without the necessity to
review the depositions.

Since the appellant has no claim of relief under
either the Montana Constitution or 47 U.S.C. §605, the
District Court's summary judgment is affirmed.

_____
Justice

-8-

We concur:

_____
                Chief Justice

_____


_____
            Justice

Mr. Justice Frank B. Morrison, Jr., specially concurs:

I agree with the result, however, I would affirm the trial court's determination that the privacy provision, Article II, Section 10, of the Montana Constitution, is not offended by individual action as opposed to governmental action.

_____
Justice