No. 13766

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

BENITO STEWART and ANGELA STEWART,
husband and wife,

Respondents and Plaintiffs,

-vs-

BOARD OF COUNTY COMMISSIONERS OF
BIG HORN COUNTY, MONTANA,

Appellant and Defendant.

MARY BROKEN ROPE,

Appellant and Plaintiff,

-vs-

BOARD OF COUNTY COMMISSIONERS OF
BIG HORN COUNTY, MONTANA,

Respondent and Plaintiff,

-vs-

MARY ELIZABETH TOBACCO,

Appellant and Plaintiff

-vs-

BOARD OF COUNTY COMMISSIONERS OF
BIG HORN COUNTY, MONTANA,

Respondent and Defendant.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Leonard H. Langen, Judge presiding.

Counsel of Record:

For Appellants:

Hon. Mike Greely, Attorney General, Helena, Montana
Mike McCarter, Assistant Attorney General, argued,
Helena, Montana
James F. Seykora, County Attorney, argued, Hardin, Montana

For Respondents:

Edwin Dyer argued, Hardin, Montana
William D. Hutchinson argued, Helena, Montana

---

Submitted: December 5, 1977

Decided: DEC 30 1977

Filed: DEC 30 1977

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

These three cases were consolidated on appeal because they involve the same issues. The plaintiffs brought suit to have certain tax deed sales declared null and void and to exercise their alleged statutory preferential right of repurchase. The defendant Board of County Commissioners appeal from the District Court's decision in Stewart, and the plaintiffs in Broken Rope and Tobacco appeal from the decisions for the defendant Board in those cases.

Benito and Angela Stewart, husband and wife, owned certain real property in Wyola, Montana. The Stewarts fell delinquent in their real property taxes, and on March 3, 1975, Big Horn County acquired the property by tax deed. On April 9, 1975, this property was sold at public auction to Mr. and Mrs. Gilbert Harris.

Mary Broken Rope owned certain real property located in Crow Agency, Montana, and Mary Elizabeth Tobacco owned certain real property located in Wyola, Montana. They also fell delinquent in their real property taxes. On June 30, 1975, Big Horn County acquired these properties by tax deed and on November 17, 1975, it offered them for sale at public auction. Daniel and Carlene Old Elk purchased the Broken Rope property under a contract of sale dated November 18, 1975, and Clarence and Violet Englert purchased the Tobacco property at the November 17, 1975 public sale.

The plaintiffs in all these cases filed similar complaints against the Board of County Commissioners alleging that the Board did not comply with section 84-4190, R.C.M. 1947, the statute governing the procedure for sale of county tax deed lands, and that therefore the sales of these particular properties were null and void. Section 84-4190 requires the Board to determine the fair market value of the property for sale, to state that value in the Notice of Sale, and to make no sale of the property for less than that

value.  The plaintiffs allege that this statute requires the Board to make an _objective_ determination of the fair market value of the properties according to certain accepted methods of determining fair market value but that the Board failed in this respect because the Notices of Sale placed an "unreasonably low value" upon their properties.  They further allege that once the sales are set aside, they should be allowed to exercise their statutory right of repurchase under section 84-4190 and that they stand "ready, willing and able" to exercise this right.

In all three cases, the defendant Board filed motions to dismiss for failure to state a claim for relief.  These motions were subsequently denied.  The Board then answered the complaints and alleged the following affirmative defenses:  (1) Section 84-4190 states that the Board of County Commissioners shall determine and fix the fair market value of the properties to be sold, thus leaving the entire appraisal value in the discretion of the Board; (2) the complaints failed to state a claim for relief; and (3) the applicable statute of limitations barred the action.

In the _Stewart_ and _Broken Rope_ cases, interrogatories and answers were filed indicating the procedure the Board followed in establishing the fair market value of the properties.  In all three cases, the parties stipulated as to the appraised values contained in the Notices for Sale and the amount of the taxes, penalties and interest due at the time of the taking of the tax deed by Big Horn County on all properties offered for sale at the April 9, 1975 and November 17, 1975 public sales.  The plaintiffs contend that the answers to interrogatories and the stipulations demonstrate that the Board established the fair market value of these properties merely by rounding off to the nearest whole number the amounts owed on the properties for taxes, penalties and interest and that such method of establishing the fair market value was arbitrary.

Both parties in the three cases moved for summary judgment. After briefs were submitted and oral argument heard, the District Court entered judgment in favor of the Stewarts in Stewart, and in favor of the Board in Broken Rope and in Tobacco. The losing parties appealed.

Both sides have raised numerous issues on appeal regarding the action taken in the District Court. In addition the Board asserts for the first time on appeal several procedural issues including whether the plaintiffs lack standing to challenge the method by which the Board determined the fair market value of the properties in question. Because we feel the standing issue must be decided adversely to the plaintiffs, we will not discuss the other issues which the parties have raised.

The concept of standing arises from two different doctrines: (1) Discretionary doctrines aimed at prudently managing judicial review of the legality of public acts, 13 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction §3531 at 176; and (2) doctrines of constitutional limitation in the federal courts drawn from the "cases and controversies" definition of federal judicial power in Article III, United States Constitution and in the Montana courts drawn from the "cases at law and in equity" definition of state judicial power in Article VII, 1972 Montana Constitution.

Prior Montana cases which have dealt with the issue of standing have considered it in the context of challenges to the constitutionality of legislative enactments, Chovanak v. Matthews (1948), 120 Mont. 520, 188 P.2d 582, and in the context of taxpayer and elector suits, State ex rel. Mitchell v. District Court (1954), 128 Mont. 325, 275 P.2d 642; Holtz v. Babcock (1963), 143 Mont. 341, 389 P.2d 869, reh.den. (1964), 143 Mont. 371, 390 P.2d 801; and State ex rel. Conrad v. Managhan (1971), 157 Mont. 335, 485 P.2d 948.

-4-

From these cases we synthesize that the issue presented for review must represent a "case" or "controversy" within the judicial cognizance of the state sovereignty. Additionally, the following minimum criteria are necessary to establish standing to sue a governmental entity: (1) The complaining party must clearly allege past, present or threatened injury to a property or civil right; and (2) the alleged injury must be distinguishable from the injury to the public generally, but the injury need not be exclusive to the complaining party.

What injury to a property or civil right have the plaintiffs alleged? In their brief, the plaintiffs argue that section 84-4190 requires the Board to appraise and sell tax deed properties at their fair market value, not an arbitrarily selected lower value, "in order to protect the interest of the taxpayers of the County as a whole." Apparently, their theory is that properties sold for less than their fair market value will decrease county revenues thereby eventually increasing county taxes. The plaintiffs, however, do not allege in their complaints that they are taxpayers of Big Horn County and therefore, have elected not to base their standing on a taxpayer status.

Instead, they allege that the injury they will suffer if the tax deed sales are declared valid is to deprive them of their preferential right to repurchase their properties under section 84-4190. This right allows them to repurchase their properties by paying only the taxes, penalties and interest due instead of paying the property's fair market value as determined by the Board of County Commissioners.

The preferential right of repurchase in section 84-4190 is not an absolute right, but a defeasible right. This right vested in the former owners of tax deed property is defeated if he does not pay the taxes, penalties and interest due " * * * before the time fixed for the first offering of said property for sale * * *."

-5-

Section 84-4190, R.C.M. 1947. Although one of the tax deed properties involved in these cases was offered for sale and sold on April 9, 1975, and the property in the other two cases was offered for sale and sold on or about November 17, 1975, the plaintiffs apparently at no time have attempted to make the required payments. In their complaints, they allege only that they stand "ready, willing and able" to exercise their preferential rights of repurchase. Plaintiffs have not alleged in their complaints that they have complied with the provisions of section 84-4190 by making tender of the taxes, penalties and interest due on their properties before the respective first offerings of their property for sale. Due to their own inaction, the preferential right granted them by section 84-4190 no longer exists. Having lost their preferential right to repurchase, the plaintiffs have alleged no injury to a property or civil right. We therefore hold that they lack standing to sue the Board of County Commissioners for alleged improper procedure in the tax deed sales of their former properties.

Plaintiffs argue that if this Court were to declare the tax deed sales null and void for failure of the Board of County Commissioners to follow proper statutory procedure in the sale of the property, they would still be able to exercise their preferential right of repurchase "before the time fixed for the first offering" of the property for sale. This contention cannot withstand an examination of the legislative history of section 84-4190.

The original predecessor of the preferential right of repurchase provision in section 84-4190 was first enacted in 1933. The history of amendments to this section demonstrates that the legislature has constantly narrowed the time frame within which the preferential right may be exercised. As initially enacted in 1933, and then re-enacted in 1939, the statute provided that the taxpayer could exercise the right "at any time before such sale". 1933 Mont.

-6-

Laws (Extra.), Ch. 33, §1; 1939 Mont. Laws, Ch. 181, §1. This Court held that under this language if the property was offered for sale but not sold, the taxpayer could still exercise his preferential right of repurchase. State ex rel. Johnson v. Garfield Co. (1944), 116 Mont. 300, 151 P.2d 481. In 1941, the legislature amended the statute to read that the taxpayer could exercise the right "at any time before the date fixed for such sale". 1941 Mont. Laws, Ch. 171, §1. Under this language even though the property had been offered for sale but not sold, the taxpayer was precluded from later exercising his preferential right of repurchase. Beckman Bros. v. Weir (1947), 120 Mont. 305, 184 P.2d 347.

The 1941 amendment left unresolved the situations where the Board set one date for the sale but because no sale was made, it later set a second date for the sale, or as in the instant case where the sale is made but is later declared null and void. The 1945 amendment resolves these situations. The legislature amended the statute to its present form; the taxpayer could exercise his preferential right of repurchase "at any time before the time fixed for the first offering of said property for sale." 1945 Mont. Laws, Ch. 144, §1.

The clear emphasis of this language is on the time fixed for the _first offering_ of the property for sale, not on whether the sale was actually consummated or whether it was later set aside. The legislative amendments to this statute evince an intent to fix a precise time at which the taxpayer's right to repurchase is defeated. That time is at the "first offering" of the property for sale, not at the first completed sale or at the first unchallenged sale.

A first offering of the properties for sale was made on April 9, 1975 for one of the properties and on November 17, 1975 for the other properties. The plaintiffs did not allege in their complaints that they tendered payment before those respective dates. Under no set of facts that they have alleged have they shown injury to themselves for which this Court may grant relief.

Plaintiffs argue that the defendant Board is raising the issue of standing for the first time on appeal and that under the rule in LaBonte v. Mutual Fire & Lightening Ins. Co. (1925), 75 Mont. 1, 241 P. 631, the Board is now precluded from raising this defense. The question raised in LaBonte, however, was whether the plaintiff was the real party in interest, not whether the plaintiff had standing to sue. The concepts of "standing to sue" and "real party in interest" are very different. 6 Wright & Miller, Federal Practice & Procedure: Civil §1542. Objections to standing cannot be waived and may be raised by the court sua sponte. United States v. Storer Broadcasting Co. (1956), 351 U.S. 192, 197, 76 S.Ct. 763, 100 L.Ed. 1081; 6 Wright & Miller, Federal Practice & Procedure: Civil §1542 at 642-43.

The judgment in Stewart is reversed and the judgments in Broken Rope and Tobacco are affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices