No. 95-579

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


HELENA PARENTS COMMISSION, et al.,

      Plaintiffs and Appellants,

  v.

LEWIS AND CLARK COUNTY COMMISSIONERS, et al.,

      Defendants and Respondents

FILED

JUL 25 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
              In and for the County of Lewis and Clark,
              The Honorable Jeffrey M. Sherlock, Judge presiding.


COUNSEL OF RECORD:

      For Appellants:

          Lawrence G. Allen and William Wewer,
          Wewer Law Firm, Helena, Montana

      For Respondents:

          Allen B. Chronister, Chronister, Moreen
          & Larson, Helena, Montana
          (for Lewis and Clark County Respondents)

          P. Keith Keller, Keller, Reynolds, Drake,
          Johnson & Gillespie, Helena, Montana
          (for School District Respondents)


                   Submitted on Briefs:  May 2, 1996

                         Decided: July 25, 1996

Filed:

_____
  Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Appellants, the Helena Parents Commission and several individuals (HPC), filed a complaint in the District Court for the First Judicial District in Lewis and Clark County in which they sought a declaratory judgment against respondents, Lewis and Clark County and Helena School District Number One, related to certain investments of public funds made by them from 1991 to present. Respondents filed motions to dismiss and after a hearing, the District Court granted the dismissal. The Court dismissed a claim against the County Attorney for failure to state a claim and dismissed the other claims for lack of standing. HPC appeals the court's order of dismissal. We affirm that part of the District Court's order which pertains to the County Attorney and reverse the remainder of the order in which the Court concluded that HPC did not have the requisite standing.

Two issues are presented on appeal:

1. Did the District Court err when it dismissed HPC's claim against both respondents for lack of standing?

2. Did the District Court err when it dismissed HPC's claim against the County Attorney for failure to state a claim?

FACTUAL BACKGROUND

Appellants, Helena Parents Commission and several individuals (HPC), brought a declaratory judgment action, in which they asked the District Court to interpret relevant Montana statutes and determine the parties' rights pursuant to those statutes. HPC

contends that Lewis and Clark County and Helena School District Number One (respondents) illegally managed public funds from 1991 to the present. HPC asserts standing as property taxpayers residing in Lewis and Clark County, as parents who have children attending school in Helena School District Number One, or as persons who receive benefits or services from local government entities.

HPC's complaint consists of several counts:

Count I alleges that respondents illegally invested School District and County funds in certain collateralized mortgage obligations (CMOs); Count II alleges that Lewis and Clark County illegally purchased the School District's illegal CMO investments; Count III alleges that Lewis and Clark County illegally invested its own money in CMOs; Count IV alleges that there was an illegal investment concerning the County's bond sinking funds in CMOs; Count V alleges that the County Treasurer violated her statutory duty to protect the investments of the County's bond sinking funds; Count VI alleges that the Treasurer or Finance Officer made an improper accounting of interest earned on bond sinking fund investments; and Count VII alleges that the Lewis and Clark County Attorney had an affirmative duty to pursue legal recourse and seek recovery of the losses against such government officials but failed to do so despite being informed by HPC prior to its filing of the request for declaratory judgment. HPC contended that these investments of public funds were not only illegal pursuant to

statute, but also resulted in a loss of more than $5.5 million of property tax revenue intended to support taxpayer services provided by the School District and the numerous local government entities of Lewis and Clark County.

Respondents filed a motion to dismiss and after a hearing, the District Court granted the dismissal. The court dismissed the claim against the County Attorney for failure to state a claim and dismissed the other claims for lack of standing. HPC appeals the court's order of dismissal.

## ISSUE 1

Did the District Court err when it dismissed HPC's claim against both respondents for lack of standing?

The question of whether the District Court properly granted the motion to dismiss is a conclusion of law. *Common Cause v. Argenbright* (Mont. 1996), 917 P.2d 425, 427, 53 St. Rep. 386, 387. We review a district court's conclusions of law to determine whether the court's interpretation and application of the law is correct. *Jim's Excavating Serv. v. HKM Assocs.* (1994), 265 Mont. 494, 501, 878 P.2d 248, 252.

When it considers a motion to dismiss made pursuant to Rule 12(b)(6), M.R.Civ.P, a court must view the allegations in the light most favorable to the plaintiff and accept as true all facts well pleaded. *Lockwood v. W.R. Grace&Co.* (1995), 272 Mont, 202, 207, 900 P.2d 314, 317. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

4

can prove no set of facts in support of his claim which would entitle him to relief. *Farris v. Hutchinson* (1992), 254 Mont. 334, 336, 838 P.2d 374, 375.

The District Court concluded that HPC lacked standing and dismissed HPC's complaint. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin* (1975), 422 U.S. 490, 498. In addition, "when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." *Flast v. Cohen* (1968), 392 U.S. 83, 99-100. We have stated that the following criteria must be satisfied to establish standing:

> (1) The complaining party must clearly allege past, present or threatened injury to a property or civil right; and (2) the alleged injury must be distinguishable from the injury to the public generally, but the injury need not be exclusive to the complaining party.

*Sanders v. Yellowstone County* (Mont 1996), 915 P.2d 196, 198, 53 St. Rep. 305, 306 (citing *Stewart v. Board of County Comm'rs* (1977), 175 Mont. 197, 201, 573 P.2d 184, 186).

As to the injury requirement, we have stated that a plaintiff is required to allege "a personal stake in the outcome of the controversy," *Bowen v. McDonald* (Mont. 1996), 915 P.2d 201, 206, 53 St. Rep. 343, 346 (citing *Olson v. Department of Revenue* (1986), 223 Mont. 464, 469, 726 P.2d 1162, 1166); *Western Litho v. Board of County Comm'rs*

5

(1977), 174 Mont. 245, 247, 570 P.2d 891, 892 (quoting *Baker v. Carr* (1962), 369 U.S. 186, 204), and that "[i]t is not enough that appellants allege an injury which others may have suffered by the operation of some statute. They must allege an injury personal to themselves as distinguished from one suffered by the community in general." Olson, 233 Mont. at 470, 726 P.2d at 1166. *But see Grossman v. Department of Natural Resources* (1984), 209 Mont. 427, 439, 682 P.2d 1319, 1325 (holding that in special circumstances, presenting issues of an urgent nature, this Court will accept original jurisdiction and drape the taxpayer with standing). The requirement that a plaintiff demonstrate an injury "is most easily satisfied if a plaintiff alleges either a direct economic injury or alleges that she is confronted with the prospect of criminal prosecution." Eric J. Kuhn, Comment, <u>Stood Up at the Courthouse Door</u>, 63 Geo. Wash. L. Rev. 886, 891 (1995) (citing *Pennel v. City of San Jose* (1988), 485 U.S. 1, 8 (concluding that the likelihood of enforcement of a rent-control ordinance causing lower rents for landlords is sufficient to constitute an injury-in-fact) and *Virginia v. American Booksellers Ass'n* (1988), *484* U.S. 383, 392-93).

Here, plaintiffs alleged that the government will impose tax burdens on them as it seeks to recoup losses and that the investments will result in a lessening of governmental services. These allegations of an economic injury satisfy the injury requirement.

The District Court, however, did not conclude that HPC failed to meet the injury requirement. Instead, it based its dismissal of HPC's complaint on its failure to meet the second requirement for standing--"the alleged injury must be distinguishable from the injury to the public generally." *Sanders,* 915 P.2d at 198, 53 St. Rep. at 306. In dismissing HPC's complaint, the Court relied on *Chovanak v. Matthews* (1948), 120 Mont. 520, 527, 188 P.2d 582, 585, and stated that "the interest of a citizen, electorate, taxpayer, and resident of Lewis and Clark County is not, alone, sufficient to invoke the exercise of judicial power." In so holding, the court failed to consider that "the injury need not be exclusive to the complaining party," *Sanders,* 915 P.2d at 198, 53 St. Rep. at 306, and failed to consider *Lee v. State* (1981), 195 Mont. 1, 635 P.2d 1282.

In *Lee,* we discussed *Chovanak* and held that a plaintiff who drove an automobile on Montana's highways had sufficient standing to attack, via a declaratory judgment, the constitutionality of a 55 mile-per-hour speed limit proclaimed by the attorney general. Lee, 195 Mont. 1, 7, 635 P.2d 1282, 1285. In *Lee,* the State claimed that the plaintiff lacked standing because all members of the driving public had an affected interest in the statute, and attempted to dismiss the case on those grounds. We distinguished *Chovanak,* rejected defendant's argument, and noted that such an argument would render the Uniform Declaratory Judgment Act meaningless. We stated:

7

In that case [*Chovanak*]Chovanak attacked a 1945 Montana statute providing for the licensing of slot machines owned and operated by religious, fraternal, charitable or nonprofit organizations. He sued as a resident, citizen and elector. This Court pointed out that he was suing against gambling in general, and said that it appeared from his complaint that slot machines, licensed or unlicensed, were utterly anathema to him. This Court found no controversy between him and the defendants in that case.

On the other hand, Gary Lee is <u>directly affected</u> by the operation of the statute he attacks. . . . The statute he attacks operates against him and all drivers in Montana directly. All members of the driving public have an affected interest under the statute attacked, but that does not mean that no member of that driving public can question the constitutional validity of the statute without being arrested for a violation. <u>The acts of the legislature which directly concern large segments of the public, or all the public, are not thereby insulated from judicial attack.</u> Otherwise, the Uniform Declaratory Judgment Act would become largely useless . . .

*Lee*, 195 Mont. at 7, 635 P.2d at 1285 (emphasis added). Therefore, we concluded that while the harm must be distinguishable from injury to the public in general, it need not be an expressly unique harm. *See also O'Donnell Fire Serv. & Equip. Co. v. Billings* (1985), 219 Mont. 317, 320, 711 P.2d 822, 824; *Stewart v. Board of County Comm'rs* (1977), 175 Mont. 197, 201, 573 P.2d 184, 186.

This case is similar to Lee in several respects. While Lee asked for a declaratory ruling concerning the legality of the Attorney General's action as measured by the 1972 Montana Constitution, in this case, HPC asks for a declaratory ruling concerning various government officials' actions pursuant to relevant Montana statutes. Further, HPC alleges direct injury from the conduct complained of. HPC alleges that those of its members

8

who pay property taxes will have them increased, that those of its members who have children in school will see a reduction in opportunities, and that those of its members who receive various public services will see a reduction in those services as the government seeks to recoup its alleged $5.5 million in losses. Not everyone who claims they will be injured claims to have been injured in the same way, and while each plaintiff claims a form of harm in common with other members of a larger class of people, the harm each claims is not common to all members of the general public.

Not only have we held that the harm need not be exclusive to the plaintiff, but the United States Supreme Court has also held similarly. As one commentator noted:

> The [United States Supreme] Court's refusal to serve "as a forum in which to air . . . generalized grievances" should be distinguished from situations in which a large group of people share the same injury. In the former situation the Court typically denies standing; in the latter situation the Court has indicated a willingness to adjudicate on the merits.

Kuhn, Stood Up at the Courthouse Door, 63 Geo. Wash. L. Rev. at 895 (footnotes omitted).

The United States Supreme Court demonstrated this willingness to invest large groups of people with standing when it upheld the standing of a group of Georgetown law students to contest a railroad rate increase approved by the Interstate Commerce Commission. *United States v. SCRAP* (1973), *412* U.S. 669. The students argued that an increase in the cost of shipping would discourage

recyclable containers in favor of disposables and that some of the disposables would be discarded in parks frequented by the students, causing them aesthetic injury. The Supreme Court accepted this contention. "To deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." *SCRAP*, 412 U.S. at 688 (emphasis added); see also *Sierra Club v. Morton* (1972), 405 U.S. 727, 734 (holding that "the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process.").

For these reasons we reverse the order of the District Court dismissing HPC's complaint for lack of standing.

ISSUE 2

Did the District Court err when it dismissed HPC's claim against the County Attorney for failure to state a claim?

We review a district court's conclusions of law to determine whether the court's interpretation and application of the law is correct. *Jim's Excavating Serv. v. HKM Assocs.* (1994), 265 Mont. 494, 501, 878 P.2d 248, 252. As stated above, in considering a motion to dismiss made pursuant to Rule 12(b)(6), M.R.Civ.P., a court must view the allegations in the light most favorable to the plaintiff and accept as true all facts well pleaded. *Lockwood v. W.R. Grace & Co.* (1995), 272 Mont. 202, 207, 900 P.2d 314, 317

10

Count VII of HPC's complaint addresses the County Attorney's duty to prosecute public officials for illegal investments. Specifically, the complaint alleges that "the County Attorney has refused to prosecute or otherwise pursue a course of legal action against the governmental officials, officers, employees or agents involved in the mismanagement of County, School District, and Local Authority funds." The District Court dismissed HPC's complaint against the County Attorney for failure to state a claim.

It is well established that a decision as to whether or not to prosecute and what charge to bring against an individual is entirely within the discretion of the county attorney. *State v. Lemmon* (1984), 214 Mont. 121, 126, 692 P.2d 455, 457. Moreover, a county attorney "is a quasi-judicial officer who enjoys common law immunity from civil liability for conduct within the scope of his duties." *Ronek v. Gallatin County* (1987), 227 Mont. 514, 516, 740 P.2d 1115, 1116. *See also State ex rel. Fletcher v. District Court* (1993), 260 Mont. 410, 415, 859 P.2d 992, 995; *Lemmon*, 214 Mont. at 126, 692 P.2d at 457. Therefore, the District Court correctly dismissed HPC's claim against the Lewis and Clark County Attorney.

We affirm the District Court's dismissal of the complaint against the County Attorney, reverse the court's dismissal of the remainder of the complaint, and remand for further proceedings.

_____
Justice

11

We concur:

_____
       Chief Justice

_____

_____
       Justices

12

Justice W. William Leaphart, specially concurring.

I concur with the Court's conclusion that the claim against the county attorney was properly dismissed and that HPC has standing. I specially concur, however, to note that § 20-3-332, MCA, which was invoked by the plaintiffs and discussed by the District Court, provides authority for HPC's standing to sue the school district trustees. Section 20-3-332(2), MCA, provides that:

> (2) The trustees of each district shall be responsible for the proper administration and utilization of all moneys of the district in accordance with the provisions of law and this title. Failure or refusal to do so shall constitute grounds for removal from office. Those trustees consenting to illegal use of the moneys shall be jointly and individually liable to the district for any losses the district has realized. The county attorney shall prosecute any proceeding arising pursuant to this section, *or a party* seeking *such action may retain private* counsel. The party commencing the action shall be liable for the costs if the action fails. [Emphasis added.]

Section 20-3-332(2), MCA, provides for trustee liability for illegal use of monies. The statute also clearly envisions that, in addition to the county attorney being able to file suit to impose this liability on behalf of the public, other private parties may retain counsel and seek to impose the liability as well. In recognizing that parties may retain private counsel and file suit pursuant to this statute, the legislature has acknowledged that private parties too will be injured by the illegal use of monies and that such injury is distinguishable from the injury to the public generally. Stewart v. Board of County Commr's (1977), 175 Mont. 197, 201, 573 P.2d 184, 186. If plaintiffs, as parents and taxpayers, do not qualify as such "parties," then it is difficult

13

**to imagine** who would.  Accordingly,  I would hold that HPC has standing to sue the school district trustees based upon the narrow provisions of § 20-3-332(2), MCA.

_____/s/ W. William Leaphart_____
Justice

14

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Lawrence G. Allen, Esq. — *personally picked up*
William Wewer, Esq.
Box 555
Helena MT 59624-0555

Allen B. Chronister
Chronister, Moreen & Larson
P.O. Box 1152
Helena, MT 59624

Keith Keller
Keller, Reynolds, Drake, Johnson & Gillespie — *personally picked up.*
38 South Last Chance Gulch
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *D. Gallagher*
Deputy