DA 24-0235

FILED

03/25/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0235

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 56

JEFF GOTTLOB, ELAINE MITCHELL, JAMES
CHILDRESS, AND ALL OTHERS SIMILARILY
SITUATED,

      Plaintiffs and Appellees,

  v.

MICHAEL DESROSIER, RON RIDES AT THE
DOOR, TOM MCKAY, JOHN OVERCAST,
MARY JO BREMNER, and GLACIER COUNTY,

      Defendants and Appellants,

MONTANA ASSOCIATION OF COUNTIES and
MONTANA ASSOCIATION OF COUNTIES
PROPERTY & CASUALTY TRUST,

      Defendants.

APPEAL FROM:    District Court of the Ninth Judicial District,
                In and For the County of Glacier, Cause No. DV-17-19
                Honorable Kaydee Snipes Ruiz, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Terryl T. Matt, Glacier County Attorney, Cut Bank, Montana

          Kirk Evenson, Marra, Evenson & Levine, P.C., Great Falls, Montana

      For Appellee:

          Lawrence A. Anderson, Attorney at Law, P.C., Great Falls, Montana

                      Submitted on Briefs:  December 18, 2024

                                 Decided:  March 25, 2025

Filed:

                 _____
                          Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Glacier County and several of its current and former County Commissioners appeal a Ninth Judicial District Court order certifying class claims related to Plaintiffs' allegations that the County unlawfully made expenditures or disbursements of public funds or incurred obligations in excess of total appropriations.  We consider the following restated issues:

> 1. *Do Plaintiffs have standing to bring their claims?*
>
> 2. *Did the District Court abuse its discretion in determining that the Plaintiffs met the prerequisites for class certification under M. R. Civ. P. 23(a)?*
>
> 3. *Did the District Court abuse its discretion in certifying the class under M. R. Civ. P. 23(b)?*

¶2      We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      This case concerns a longstanding dispute between Glacier County, the County Commissioners, and Glacier County real property taxpayers.  Plaintiff Elaine Mitchell initially sued the County and the State on behalf of herself and other County residents in 2015, alleging that both entities had failed to comply with the Single Audit Act and the Local Government Budget Act. *Mitchell v. Glacier Cnty.*, 2017 MT 258, ¶¶ 3, 22, 34, 389 Mont. 122, 406 P.3d 427.  Mitchell sued after an independent audit showed that many county funds had deficit balances and noted that "the County had exceeded its budgetary authority with respect to many of those funds." *Mitchell*, ¶¶ 2-3, 18.  The audit also identified that, despite the deficits in some accounts, the County's total government funds stood at $4 million in 2013 and 2014. *Mitchell*, ¶ 18.  In bringing claims against the State, *Mitchell* plaintiffs asserted that "the State ha[d] not fulfilled its fiduciary duty to ensure

2

'strict accountability' under the Constitution and that the State ha[d] abdicated its enforcement obligations under the Single Audit Act." *Mitchell*, ¶ 22. *Mitchell* plaintiffs sought numerous forms of relief against the County, including declarations that it "had failed to comply with generally accepted governmental accounting standards"; that "the County was in violation of laws designed to ensure 'strict accountability' of government finances"; and that "County officials who incurred financial obligations in excess of appropriations were personally liable for the resulting budget deficits." *Mitchell*, ¶ 3. The *Mitchell* plaintiffs alleged that the County's budget deficit threatened them with "foreseeable" economic injury. *Mitchell*, ¶ 34. On appeal, we held that plaintiffs' claims against the County were insufficiently concrete, actual, or imminent to confer standing. *Mitchell*, ¶¶ 36-37, 43.

¶4 The named Plaintiffs here—Mitchell, Jeff Gottlob, and James Childress—paid their real property taxes under protest to Glacier County while the *Mitchell* appeal was pending. In 2017, they filed the present action on behalf of themselves and others similarly situated against Glacier County and the County Commissioners (collectively, the County), alleging that the County unlawfully liquidated the fund containing the taxes paid under protest in violation of § 15-1-402(4)(a), MCA.[1]

---

[1] Section 15-1-402(4)(a), MCA, provides that a county must keep taxes paid under protest in a special fund to be retained until "the final determination of any action or suit to recover the taxes." The District Court granted Plaintiffs partial summary judgment on this issue, ruling that the Defendants "improperly liquidat[ed] the special account while the dispute was still pending." This ruling is not before us in the present appeal.

¶5 To maintain their tax dispute, Plaintiffs continued paying their taxes annually under protest. *See* § 15-1-406(3), MCA ("The taxes that are being challenged under this section must be paid under protest when due as a condition of continuing the action."). Consequently, Plaintiffs amended their complaint five times, adding new claims to reflect the taxes they paid each year. In their Sixth Amended Complaint—the complaint at issue here—Plaintiffs alleged that "[f]or fiscal years 2012 through 2020, the Glacier County Audits show the Commissioners have made expenditures or disbursements or incurred obligations in excess of total appropriations for funds in violation of § 7-6-4005(1), MCA." Plaintiffs also alleged that they,

> as Glacier County taxpayers, have been injured because they have incurred and will incur tax obligations to pay for the Commissioners' disbursements, expenditures and incurrence of obligations in excess of the total appropriations for the funds previously identified, and because they have lost Glacier County services as a result of the Commissioners' . . . actions in violation of § 7-6-4005(1), MCA.

Relying on these factual allegations, Plaintiffs brought five counts in their Sixth Amended Complaint: negligence per se for the County's unlawful liquidation of the tax protest fund (Count I); negligence per se for unlawful disbursement from County funds (Count II); declaratory judgment (Count III); class claims under M. R. Civ. P. 23 (Count IV); and a common fund claim (Count V). Plaintiffs did not reassert the *Mitchell* claims against the State. *Mitchell*, ¶ 3.

¶6 The County filed a motion to dismiss Counts I and II of Plaintiffs' Sixth Amended Complaint. The District Court did not consider the County's motion to dismiss Count I

4

because it already had granted Plaintiffs summary judgment on this count. The court denied the motion to dismiss Count II.

¶7 Plaintiffs filed a motion to certify Count II as a class action. They argued that the class held two factual and legal questions in common:

1) Whether, for the fiscal years 2012 through 2020, the Defendants have made disbursements and incurred obligations in violation of § 7-6-4005(1)[, MCA].

2) Whether, for the fiscal years 2012 through 2020, the Defendants should be held personally liable and/or jointly and severally liable under the provisions of § 7-6-4005(2), MCA, for their violations of § 7-6-4005(1)[, MCA].

The District Court granted Plaintiffs' motion and certified Count II as a class action, defining the class as "[p]roperty taxpayers of Glacier County who have paid their property taxes for tax years 2012 to 2020." The County appeals the class certification order and the District Court's denial of its motion to dismiss for Plaintiffs' lack of standing.

## STANDARDS OF REVIEW

¶8 "The determination of a party's standing . . . is a question of law that we review de novo." *Mitchell*, ¶ 6 (citation omitted).

¶9 "Trial courts have the broadest discretion when deciding whether to certify a class." *Worledge v. Riverstone Residential Grp., LLC*, 2015 MT 142, ¶ 14, 379 Mont. 265, 350 P.3d 39 (quoting *Sieglock v. Burlington N. & Santa Fe Ry. Co.*, 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495). We therefore review a district court's ruling on class certification for an abuse of discretion. *Byorth v. USAA Cas. Ins. Co.*, 2016 MT 302, ¶ 13, 385 Mont. 396, 384 P.3d 455 (citation omitted). "A court abuses its discretion when it acts

5

'arbitrarily without conscientious judgment or exceed[s] the bounds of reason.'" *Worledge*, ¶ 14 (quoting *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶ 17, 368 Mont. 1, 291 P.3d 1209).

¶10    We review findings of fact that support a district court's Rule 23 decision under the clearly erroneous standard. *Worledge*, ¶ 14 (quoting *Mattson*, ¶ 17). Rulings on issues of law, including a district court's interpretation of procedural rules like Rule 23, are reviewed de novo. *Worledge*, ¶ 14 (citation omitted); *Byorth*, ¶ 13 (citation omitted). We are "reluctant to interfere with discretionary orders in the early stages of litigation, especially as the trial court has flexibility to modify its certification orders as the litigation proceeds." *Rogers v. Lewis & Clark Cnty.*, 2022 MT 144, ¶ 8, 409 Mont. 267, 513 P.3d 1256 (citation omitted); *see also* M. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

**DISCUSSION**

¶11    The County's appeal is properly before the Court on the District Court's class certification order. *See* M. R. App. P. 6(3)(d) (allowing a party to appeal an order certifying or declining to certify a class). Orders denying motions to dismiss, on the other hand, are not appealable. M. R. App. P. 6(5)(b). We nonetheless consider the County's standing argument—raised in its motion to dismiss—because "[s]tanding is a threshold jurisdictional requirement," *Mitchell*, ¶ 9 (citation omitted), that a court must evaluate at every stage of litigation. *Cross v. State*, 2024 MT 303, ¶ 14, 419 Mont. 290, 560 P.3d 637, ¶ 14 (citation omitted).

6

¶12    *1. Do Plaintiffs have standing to bring their claims?*

¶13    "The judicial power of Montana's courts, like the federal courts, is limited to 'justiciable controversies.'" *Cross*, ¶ 14 (quoting *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567). Like Article III of the United States Constitution, which limits federal courts to deciding cases and controversies, U.S. Const. art. III, § 2, cl. 1, Article VII, Section 4, of the Montana Constitution grants district courts original jurisdiction in "all civil matters and cases at law and in equity." Mont. Const. art. VII, § 4(1); *Plan Helena*, ¶ 6.

¶14    "Standing is a justiciability doctrine that is 'employed to refuse to determine the merits of a legal claim, on the ground that even though the claim may be correct the litigant advancing it is not properly situated to be entitled to its judicial determination.'" *Cross*, ¶ 14 (quoting 13A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3531, 1-2 (3d ed. 2008)). Constitutional standing requires that the plaintiff show she "has suffered a past, present, or threatened injury to a property or civil right, and that the injury would be alleviated by successfully maintaining the action." *Mitchell*, ¶ 10 (quoting *Schoof v. Nesbit*, 2014 MT 6, ¶ 15, 373 Mont. 226, 316 P.3d 831). This injury must be concrete—that is, it must be "actual or imminent, not conjectural or hypothetical." *Mitchell*, ¶ 10 (quoting *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 32, 360 Mont. 207, 255 P.3d 80). A plaintiff alleging direct economic injury or the prospect of criminal prosecution satisfies the injury requirement. *Helena Parents Comm'n v. Lewis & Clark Cnty. Comm'rs*, 277 Mont. 367, 372, 922 P.2d 1140, 1143 (1996).

7

¶15 The violation of a constitutional or statutory right may confer standing. *Mitchell*, ¶ 11 (citation omitted). "[S]tanding depends on whether the constitutional or statutory provision . . . can be understood as granting persons in the plaintiff's position a right to judicial relief." *Mitchell*, ¶ 11 (quoting *Schoof*, ¶ 21). The injury requirement of constitutional standing—even if the alleged violation is based on a statutory right—"must always be met." *Mitchell*, ¶ 11 (quoting *Heffernan*, ¶ 34).

¶16 Considering the County's standing argument, the District Court reasoned that "[t]he allegations in the Sixth Amended Complaint are far different than the allegations" Plaintiffs brought in their *Mitchell* complaint. Unlike *Mitchell*, where they alleged that it was merely "'*foreseeable*' that the County will raise property taxes to compensate for its imbalanced budget," *Mitchell*, ¶ 34 (emphasis added), the District Court found the current complaint to allege concrete injury sufficient to confer standing. The District Court likened the allegations in the Sixth Amended Complaint to the claims in *Helena Parents Commission v. Lewis and Clark County Commissioners*, reasoning that "plaintiffs allege in past tense that they incurred tax obligations as a result of the County's failure to assume personal liability" and "allege that they have lost government services as a result of the County's violations of § 7-6-4005(1), MCA." The District Court ruled that Plaintiffs' allegations are "even stronger" than those in *Helena Parents Commission*, where we held that plaintiffs had alleged an injury adequate to confer standing. *Helena Parents Comm'n*, 277 Mont. at 374, 922 P.2d at 1144. The District Court also cited Montana and federal case law for

8

the proposition that municipal taxpayers have a right to challenge their government's fiscal mismanagement.

¶17 The County argues that certain taxpayers in the certified class "are precluded under *Mitchell* from litigating [Single Audit Act] or Budget Act claims." The County asserts that because we held the *Mitchell* plaintiffs lacked standing, the District Court erred in certifying a class including the same plaintiffs. Plaintiffs counter that by advancing this argument, the County implicitly asserts that issue or claim preclusion bars Plaintiffs' claims. Citing *Denturist Association of Montana v. State*, Plaintiffs note that application of issue or claim preclusion requires a final judgment on the merits. *Denturist Ass'n of Mont. v. State*, 2016 MT 119, ¶¶ 11-12, 383 Mont. 391, 372 P.3d 466. Plaintiffs contend that there was no final judgment on the merits in *Mitchell* and consequently claim or issue preclusion do not apply to this lawsuit.

¶18 Plaintiffs assert that they have remedied the standing defects that were determinative in *Mitchell*. *See Mitchell*, ¶¶ 35-40. They highlight their present allegations—that they "have incurred and will incur tax obligations" and "have lost Glacier County services" as a result of the County's conduct. In an affidavit, Plaintiff Elaine Mitchell, who has been engaged as an accountant in Glacier County since 1976, attested that "[s]ince this case has been pending, the county has been required to either suspend or eliminate the budget for ambulance service, the county's museum, and home health care services." Plaintiffs argue that they have already suffered the same injuries that were sufficiently imminent for the plaintiffs to have standing in *Helena Parents Commission*. *Helena Parents Comm'n*,

277 Mont. at 372, 922 P.2d at 1143 ("[P]laintiffs alleged that the government will impose tax burdens on them as it seeks to recoup losses and that the investments will result in a lessening of governmental services. These allegations of an economic injury satisfy the injury requirement."). Last, Plaintiffs argue that the municipal taxpayer doctrine grants them standing to bring their claims.

¶19 Issue and claim preclusion each require that a final judgment have been entered on the merits in the prior adjudication. *Denturist Ass'n of Mont.*, ¶¶ 11-12. Dismissal of a plaintiff's claims "with prejudice" ordinarily affords preclusive effect. *See Hawkes v. Mont. Dept. of Corrections*, 2008 MT 446, ¶ 19, 348 Mont. 7, 199 P.3d 260 (citation omitted) ("An order of dismissal with prejudice is a final judgment on the merits."); *Hells Canyon Pres. Council v. USFS*, 403 F.3d 683, 686 (9th Cir. 2005) (citations omitted) ("'[F]inal judgment on the merits' is synonymous with 'dismissal with prejudice.'"); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2373, 922-29 (4th ed. 2020) ("[B]ecause an involuntary dismissal is an adjudication on the merits, it is, in the words commonly used by the federal courts, 'with prejudice.'"). *See also Touris v. Flathead Cnty.*, 2011 MT 165, ¶ 15, 361 Mont. 172, 258 P.3d 1 (citation omitted) (A case that is voluntarily dismissed with prejudice is a final judgment on the merits for purposes of res judicata, regardless of whether there was "substantive resolution on the merits" of claims.).

¶20 M. R. Civ. P. 41(b) provides that when a court grants a defendant's motion to dismiss, "[u]nless the dismissal order states otherwise, [the] dismissal . . . *except one for*

*lack of jurisdiction . . .* operates as an adjudication on the merits." M. R. Civ. P. 41(b) (emphasis added). The district court in *Mitchell* dismissed plaintiffs' claims for lack of standing, a "jurisdictional requirement." *Mitchell*, ¶¶ 5, 9. In such a case, the court "refuse[s] to determine the merits of a legal claim." *Cross*, ¶ 14 (quoting Wright & Miller § 3531, 1-2). Other courts have recognized that "[a] dismissal for lack of standing is jurisdictional and is not an adjudication on the merits." *Univ. of Pittsburg v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1332 (Fed. Cir. 2009) (citation omitted). Similarly, courts hold consistently that dismissal for lack of standing should generally be without prejudice. *See Varian Med. Sys.*, 569 F.3d at 1332 (citations omitted) (collecting cases); *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1106-07 (9th Cir. 2006) (remanding for trial court to dismiss without prejudice where plaintiff lacked standing); *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1234-35 (11th Cir. 2008) (same); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (citation omitted) ("Since standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate, and should be corrected to a dismissal without prejudice.").

¶21 Based on this authority, we conclude that the dismissal of the *Mitchell* plaintiffs' claims for lack of standing was without prejudice—in other words, the dismissal was not a final determination on the merits. Thus, claim and issue preclusion do not apply to the present dispute. *See Denturist Ass'n of Mont.*, ¶¶ 11-12.

¶22 The District Court relied on *Helena Parents Commission* to hold that Plaintiffs have now alleged sufficient facts to establish standing. The plaintiffs in *Helena Parents*

11

*Commission* argued that they had standing as property taxpayers to sue Lewis and Clark County and a Helena school district after the entities illegally invested public funds. *Helena Parents Comm'n*, 277 Mont. at 370, 922 P.2d at 1142. The Helena Parents Commission alleged that the entities lost over five million dollars of public money; that property taxpayers would see their taxes increase as a result; and that the government would have to reduce public services to recoup its losses. *Helena Parents Comm'n*, 277 Mont. at 373, 922 P.2d at 1144. We held that the plaintiff's allegations of direct economic injury satisfied the injury requirement for standing. *Helena Parents Comm'n*, 277 Mont. at 372, 922 P.2d at 1143.

¶23 In *Mitchell*, plaintiffs lacked standing because they did not make "concrete allegations that the County squandered a specific amount of money that it would need to recoup through increased property taxes." *Mitchell*, ¶ 36 (citation omitted). The *Mitchell* plaintiffs alleged that additional property tax burdens were "foreseeable," claims that were insufficiently "actual or imminent" to meet the concrete injury requirement. *Mitchell*, ¶¶ 7, 37, 40. Glacier County taxpayers now allege that they already have faced an increased tax burden and a reduction in Glacier County services due to the County's conduct. The Sixth Amended Complaint alleges that Plaintiffs "*have incurred* and will incur tax obligations" and "*have lost* Glacier County services as a result of the Commissioners' . . . actions." This contrasts with the *Mitchell* plaintiffs' "conjectural or hypothetical" allegations because here Plaintiffs allege they already have suffered economic injuries from the Defendants' actions. *See Mitchell*, ¶ 37 (quoting *Heffernan*, ¶ 32). We conclude that, because they

12

have alleged concrete economic injuries like those in *Helena Parents Commission*, Plaintiffs meet the injury requirement for standing. *See Helena Parents Comm'n*, 277 Mont. at 372, 922 P.2d at 1143. The District Court did not err when it ruled that Plaintiffs have standing to bring their claims.

¶24 *2. Did the District Court abuse its discretion in determining that the Plaintiffs met the prerequisites for class certification under M. R. Civ. P. 23(a)?*

¶25 A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Rogers*, ¶ 15 (quoting *Jacobsen v. Allstate Ins. Co.*, 2013 MT 244, ¶ 27, 371 Mont. 393, 310 P.3d 452). "Departure from the usual rule is justified if the class representative is part of the class and has the same interest and injury as the class members." *Worledge*, ¶ 22 (quoting *Sangwin v. State*, 2013 MT 373, ¶ 12, 373 Mont. 131, 315 P.3d 279). Class action suits allow litigation of common issues of law and fact in a single case, conserving the judiciary's and similarly situated parties' resources. *Rogers*, ¶ 15 (citation omitted). "Rule 23 of the Montana Rules of Civil Procedure governs class certification in Montana." *Worledge*, ¶ 22.

¶26 The party seeking certification under Rule 23(a) must establish that the class meets four prerequisites: numerosity, commonality, typicality, and adequate representation. *Worledge*, ¶ 23; M. R. Civ. P. 23(a). Failure to establish any one of the Rule 23(a) prerequisites is fatal to class certification, *Rogers*, ¶ 15, but the "class action proponent need not prove each element with absolute certainty." *Cook v. Buscher Constr. & Dev., Inc.*, 2024 MT 137, ¶ 10, 417 Mont. 111, 551 P.3d 811 (quoting *Roose v. Lincoln Cnty. Emp. Grp. Health Plan*, 2015 MT 324, ¶ 14, 381 Mont. 409, 362 P.3d 40). The District

Court must conduct a "rigorous analysis" to determine whether each of the Rule 23(a) prerequisites is met, which "may entail analyzing some merits issues, but only to the extent that those issues are relevant to determining whether the Rule 23 requirements are satisfied." *Worledge*, ¶ 23 (citation omitted).

**Numerosity**

¶27 Numerosity means the class must be "so numerous that joinder of all members is impracticable." M. R. Civ. P. 23(a)(1). "There is no 'bright-line number' that satisfies numerosity—impracticability must be determined on a case-by-case basis." *Byorth*, ¶ 20 (quoting *Morrow v. Monfric, Inc.*, 2015 MT 194, ¶ 9, 380 Mont. 58, 354 P.3d 558). A party seeking class certification "must present some evidence of, or reasonably estimate, the number of class members." *Byorth*, ¶ 20 (quoting *Sangwin*, ¶ 17). "'Mere speculation' is not sufficient to satisfy the numerosity requirement." *Rogers*, ¶ 19 (quoting *Diaz v. Blue Cross & Blue Shield of Mont.*, 2011 MT 322, ¶ 31, 363 Mont. 151, 267 P.3d 756, *abrogated on other grounds by Chipman v. Nw. Healthcare Corp.*, 2012 MT 242, ¶ 52, 366 Mont. 450, 288 P.3d 193).

¶28 The District Court noted that it had previously certified a 1,020-person class in the case involving taxpayers who paid their taxes under protest. The court concluded that joinder was impracticable, and therefore Plaintiffs met the numerosity requirement, because the class at issue included all Glacier County property taxpayers, exceeding the 1,020 residents who paid their taxes under protest.

¶29 The County argues that the District Court had "no evidence regarding the actual number of these taxpayers who were injured." The County contends that Plaintiffs cannot meet the numerosity requirement because the court's "class definition . . . includes those taxpayers who . . . have not suffered any damages by loss of governmental services." Citing *Byorth v. USAA Casualty Insurance Company*, the County asserts that the District Court's certification order was not "specific enough" to satisfy the numerosity prerequisite. The District Court, Plaintiffs respond, was correct when it found that the class comprises at least 1,020 taxpayers; joinder is thus impracticable, and Plaintiffs meet the numerosity prerequisite.

¶30 In *Byorth*, plaintiffs sued USAA Casualty Insurance Company, alleging that the company's practice of sending medical claims to a third party for review, then denying coverage after the third party determined certain medical procedures were unnecessary, constituted breach of fiduciary duty and breach of contract and violated Montana's Unfair Trade Practices Act. *Byorth*, ¶¶ 3-5. The trial court certified a class action, and USAA filed an interlocutory appeal. *Byorth*, ¶ 1. USAA admitted that it gave the third party 154 Montana insureds' claims from 2012 to 2015, but the record contained no evidence indicating how many of these claims it denied in whole or in part. *Byorth*, ¶¶ 21-23. The record further lacked any evidence regarding the number of claims filed or denied during another relevant timeframe. *Byorth*, ¶ 21. We reversed the district court's class certification, holding that "[b]ecause the record lacks evidence or a reasonable means of

estimating the size of the class, Plaintiffs have not at this juncture satisfied their burden of proving numerosity." *Byorth*, ¶¶ 23, 44.

¶31 Here, based on those who paid taxes under protest, the District Court found that at least 1,020 Glacier County taxpayers were injured. Although the number of class members may exceed this figure, Plaintiffs' burden for the numerosity prerequisite is to provide "some evidence, or reasonably estimate" the size of the class. *Byorth*, ¶ 20 (quoting *Sangwin*, ¶ 17). Plaintiffs point to the District Court's previous certification of the class of individuals who had paid their taxes under protest. This meets their burden of providing some evidence regarding class size. *Byorth*, ¶ 20 (citation omitted). They are not obligated to prove every element with absolute certainty. *Cook*, ¶ 10 (quoting *Roose*, ¶ 11).

¶32 The County's numerosity argument hinges largely on its claim that only those taxpayers who attempted to access reduced government services and can show damage therefrom may be included in the class. We conclude that this argument raises a question of commonality and address it under that factor.

¶33 Assuming they share a common question of fact or law, joinder of over 1,000 taxpayers would be impracticable; therefore, the class is sufficiently numerous for certification. *See* M. R. Civ. P. 23(a)(1). The District Court did not abuse its broad discretion when it ruled that Plaintiffs satisfied the numerosity prerequisite. *See Worledge*, ¶ 14 (quoting *Sieglock*, ¶ 8).

**Commonality**

¶34 The commonality prerequisite requires "questions of law or fact common to the class." M. R. Civ. P. 23(a)(2). This means that "claims by class members and their representatives 'must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Worledge*, ¶ 25 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011)). "An alleged common legal or factual contention must demonstrate 'the class members have suffered the same injury. . . .'" *Rogers*, ¶ 23 (quoting *Wal-Mart Stores*, 564 U.S. at 350, 131 S. Ct. at 2551).

¶35 The District Court ruled that Plaintiffs demonstrated commonality because the questions of law and fact they presented—whether the County made disbursements in violation of § 7-6-4005(1), MCA, and whether the Commissioners are personally or jointly and severally liable under § 7-6-4005(2), MCA—were "common for the representatives as well as all county taxpayers."

¶36 The County argues that the District Court erred in analyzing commonality because it did not reference an injury shared across the taxpayer class. Because not all taxpayers "can claim to have lost or attempted to access the same non-essential services," the County maintains that Plaintiffs do not share a common injury. The County further insists that governmental immunity bars Plaintiffs from recovering against Glacier County or the

17

County Commissioners. Last, the County argues that the District Court failed to analyze the elements of Plaintiffs' negligence per se claim, which constitutes an abuse of discretion.

¶37 Plaintiffs respond that the County's unlawful disbursement of funds injures all taxpayers, and therefore the District Court was not obligated to identify an injury common to each member of the class. The County's governmental immunity and negligence per se arguments, Plaintiffs contend, are irrelevant to class certification.

¶38 Plaintiffs allege that they have lost access to the county museum and ambulance and home health care services—services that benefit the community at large. County taxpayers suffer a common injury when the local government allegedly mismanages its finances. *See Davenport v. Kleinschmidt*, 6 Mont. 502, 521-22, 527, 13 P. 249, 250 (1887); *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613, 109 S. Ct. 2037, 2043 (1989) (quoting *Frothingham v. Mellon*, 262 U.S. 447, 486-87, 43 S. Ct. 597, 600-01) (Municipal taxpayers have standing where the "'peculiar relation of the corporate taxpayer to the [municipal] corporation' makes the taxpayer's interest in the application of municipal revenues 'direct and immediate.'"). In *Davenport v. Kleinschmidt*, we held that Lewis and Clark County taxpayers could sue to enjoin the Helena mayor and city council from entering into an allegedly illegal contract, writing that there is "no serious question" of

> the right of resident tax-payers, to invoke the interposition of a court of equity, to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt, which they, in common with other property holders of the county, may otherwise be compelled to pay. . . .

*Davenport*, 6 Mont. at 522, 13 P. at 250 (quoting *Crampton v. Zabriskie*, 101 U.S. 601, 609 (1879)); *see also Cammack v. Waihee*, 932 F.2d 765, 770 (9th Cir. 1991) ("[W]e

18

conclude that municipal taxpayer standing simply requires the 'injury' of an allegedly improper expenditure of municipal funds. . . .") These cases addressed whether municipal taxpayers had standing to bring their claims against the government. Though not critical to our standing analysis here, the cases explain why the injury from the County's allegedly improper expenditures is common across the class. Plaintiffs' complaint does not seek individual damages for each County taxpayer allegedly injured by a deprivation of a particular government service, such as an ambulance trip. Instead, the Sixth Amended Complaint requests, for Count II, that the trial court "assess damages against the Defendants, jointly and severally liable, for the violations of § 7-6-4005(1), MCA." That statute makes a violating party "liable for the amount of the excess disbursement, expenditure, or obligation personally." Section 7-6-4005(2), MCA.

¶39 A particular taxpayer's injury from loss of a specific service could be an issue of damages but does not defeat class certification. *See Rogers*, ¶ 33 (quoting *Tyson Foods, Inc. v Bouaphakeo*, 577 U.S. 442, 453, 136 S. Ct. 1036, 1045 (2016)) ("Common questions may predominate 'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"). Whether, as the County argues, every taxpayer in the class attempted to access reduced county services is not determinative of commonality. Allegations that the County illegally disbursed public funds are sufficient to make a common contention that all county taxpayers suffered the same injury. Because Plaintiffs share the same alleged injury, answering the common questions of law and fact they pose would

"resolve . . . issue[s] that [are] central to the validity of each one of the claims in one stroke." *Worledge*, ¶ 25 (quoting *Wal-Mart Stores*, 564 U.S. at 350, 131 S. Ct. at 2545).

¶40 Additionally, class certification orders "are not frozen once made." *Cook*, ¶ 35 (quoting *Rolan v. New West Health Servs.*, 2013 MT 220, ¶ 15, 371 Mont. 228, 307 P.3d 291). Under M. R. Civ. P. 23(c)(1)(C), if the District Court finds later that Plaintiffs no longer satisfy commonality, it may alter or amend the class certification order before final judgment. The District Court therefore did not abuse its discretion when it ruled that Plaintiffs established commonality.

**Typicality**

¶41 To satisfy the typicality prerequisite, a plaintiff must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." M. R. Civ. P. 23(a)(3). Typicality "tends to merge" with commonality, *Jacobsen* ¶ 51 (citation omitted), and is "designed to ensure that the named representatives' interests are aligned with the class's interests, the rationale being that a named plaintiff who vigorously pursues his or her own interests will necessarily advance the interests of the class." *Diaz*, ¶ 35 (citation and internal quotation marks omitted). "Typicality is not a demanding standard: it is met if a named plaintiff's claim 'stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory.'" *Worledge*, ¶ 34 (quoting *Sangwin*, ¶ 21).

¶42 Contesting the District Court's typicality ruling, the County reiterates its argument that not all Glacier County taxpayers suffered the same injury as the class representatives

20

because not every taxpayer "actually lost access to [Glacier County] governmental services." Plaintiffs respond that their claims satisfy typicality because they are based on the same practice or course of conduct and involve the same legal theory.

¶43 Plaintiffs' claims stem from the same alleged practice or course of conduct—the County's alleged illegal disbursement of funds—on which the class claims rely. Plaintiffs and class members also share an identical legal theory: they allege that the County violated § 7-6-4005(1), MCA, and for this violation the county commissioners should be held personally or jointly and severally liable under § 7-6-4005(2), MCA. That not all class members attempted to access the county museum, ambulance services, or home health care services does not make Plaintiffs' claims atypical for the class because, as addressed above, all taxpayers are injured when a municipality makes illegal disbursements or expenditures. Typicality is not a demanding standard, *Worledge*, ¶ 24 (quoting *Sangwin*, ¶ 21), and the District Court did not abuse its discretion when it ruled that Plaintiffs met this requirement.

**Adequate Representation**

¶44 The County does not contest the adequate representation prerequisite; we therefore do not address it.

**County's Substantive Claims**

¶45 Citing *Prindel v. Ravalli County*, the County contends that to establish a class claim of negligence per se, class members must show that they are within the specific class the Local Government Budget Act was enacted to protect and that the statute was "intended to regulate members of the County Defendants' class." *Prindel v. Ravalli Cnty.*, 2006 MT

62, 331 Mont. 338, 133 P.3d 165. This argument, however, calls for analysis of the Plaintiffs' negligence per se claim on the merits and is unrelated to the question of common injury under Rule 23. *Byorth*, ¶ 16 (quoting *Sangwin*, ¶ 15) ("[W]e have cautioned district courts against assessing 'any aspect of the merits unrelated to a Rule 23 requirement.'"). Whether, as the County maintains, Plaintiffs and other class members belong to the specific class of persons the law was intended to protect raises a question of the Defendants' ultimate liability on the allegations of the Sixth Amended Complaint. For purposes of this appeal, it is enough to conclude—as we have here—that the class claims collectively will stand or fall with the resolution of this issue. The same holds true for the County's governmental immunity defense: it is an issue separate from the question of class certification but will, if successful, apply to all members of the class equally. The County may reassert its merits defenses as the case proceeds.

¶46    *3. Did the District Court abuse its discretion in certifying the class under M. R. Civ. P. 23(b)?*

¶47    After satisfying the Rule 23(a) prerequisites, a class must meet one of the requirements for certification under Rule 23(b). *Cook*, ¶ 29. The District Court certified the class under M. R. Civ. P. 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." A district court's predominance and superiority findings are informed by the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation

22

concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. M. R. Civ. P. 23(b)(3)(A-D). "A fundamental concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." *Cook*, ¶ 29 (citation omitted).

¶48 The District Court certified the class after finding that the County did not contest class certification under M. R. Civ. P. 23(b)(3). The County cites *Ascencio v. Orion International Corporation*, maintaining that it did not concede its Rule 23(b)(3) argument because it was not obligated to address this prong of the class certification test if the Rule 23(a) requirements were not met. *See Ascencio v. Orion Int'l Corp.*, 2018 MT 121, ¶ 15, 391 Mont. 336, 417 P.3d 1094 (quoting *Rimrock Chrysler, Inc. v. Mont. Dep't of Justice, Motor Vehicle Div.*, 2018 MT 24, ¶ 19, 390 Mont. 235, 411 P.3d 1278) (citation omitted) ("[I]f an insufficient showing is made regarding one prong of the test, there is no need to address the other prong."). The County insists that Plaintiffs do not meet the predominance and superiority requirements because the trial court must do an individualized inquiry for each class member to determine whether the person attempted to access county services. Plaintiffs argue that the County failed to preserve its Rule 23(b) argument because it did not bring the argument before the District Court. The County's confidence that its Rule 23(a) argument would prevail, Plaintiffs maintain, is no justification for failing to contest class certification under Rule 23(b).

¶49     Plaintiffs here do not seek individualized damages for loss of specific government services.  Instead, they seek damages against Defendants for unlawful liquidation of the tax protest fund; damages for violations of § 7-6-4005(1), MCA; declaratory relief that the Montana Association of Counties is jointly and severally liable for Defendants' conduct; class certification; and establishment of a common fund.  Even if each individual taxpayer's attempted access to reduced county services pertained to damages, Plaintiffs' common class questions predominate over questions affecting only individual members. *Rogers*, ¶ 33 (quoting *Tyson Foods*, 577 U.S. at 453, 136 S. Ct. at 1045) ("Common questions may predominate 'even though other important matters will have to be tried separately, such as damages . . . peculiar to some individual class members.'").  Answering the class's common questions is integral to determining whether all class members are entitled to the shared relief they seek.  The district court did not act arbitrarily, without conscientious judgment, or exceed the bounds of reason in holding that common questions predominate under Rule 23(b)(3).  *See Cook*, ¶ 9 (citation omitted).

## CONCLUSION

¶50     Plaintiffs have standing to bring this action.  The District Court did not abuse its discretion in finding that they satisfied the M. R. Civ. P. 23 criteria.  Its order certifying a class action is affirmed.  The case is remanded for further proceedings.


                                        /S/ BETH BAKER

We Concur:
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE